UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ERNESTO RIVERA,

    Plaintiff,

v.                                                                Case No. 19-CV-264

WILLIAM B. KELLEY,

    Defendant.

## ORDER

    Ernesto Rivera, a Wisconsin inmate representing himself, filed a lawsuit under 42 U.S.C. § 1983. Rivera alleges that defendant Dr. William B. Kelley violated the Eighth Amendment when he discontinued Rivera's pain medication and failed to address his subsequent complaints of pain. Before me are the parties' motions for summary judgment. For the reasons explained below, I will deny both motions.

## RELEVANT FACTS

    Under Civil L. R. 56(b)(2)(B)(i) a party must respond to each of the opposing party's proposed statements of fact, specifically referencing affidavits, declarations, parts of the record, and other supporting materials that support any disagreement. Rather than creating a separate declaration and then citing to that declaration in his responses to Dr. Kelley's proposed statements of fact, Rivera declared, under penalty of perjury, that his responses were true. (ECF No. 50 at 2.) Given that

Rivera is *pro se*, I will excuse this procedural error and consider his responses as evidence, not merely as assertions (assuming they comply with the requirements of Fed. R. Civ. P. 56(c)(4)). See Ford v. Wilson, 90 F.3d 245. 246-47 (7th Cir. 1996).

The facts are largely undisputed. Rivera has been incarcerated at Kettle Moraine Correctional Institution since October 2011. (ECF No. 45 at ¶ 1.) Dr. Kelley was a physician at Kettle Moraine from April 14, 2008 through April 15, 2019. (*Id.* at ¶ 2.)

Rivera suffers from chronic back pain. (ECF No. 50 at ¶ 10.) He explains that he has a deformed bone in his lower back that blocks the nerve canal. (*Id.*) On May 30, 2017, Dr. Kelley requested a consult at the UW Spine Clinic based on Rivera's persistent complaints about his back pain. (ECF No. 36-2 at 5.) In the request, Dr. Kelley noted that Rivera's back pain was worsening, and an MRI had confirmed nerve root compression dating back to 2004. (*Id.*) He noted that Rivera had "failed conservative management including NSAID's, HEP/PT steroid injections into hip bursae." (*Id.*) Rivera met with a UW Health physician in July 2017; she recommended, in part, a trial of Gabapentin to help treat the pain. (*Id.* at 11.)

In response to his complaints of pain over the years, he has been prescribed Gabapentin and Naproxen, been given a TENS unit, and has received steroid injections. (ECF No. 45 at ¶ 12; ECF No. 50 at ¶ 10.) According to Rivera, the TENS unit does not provide him any relief because his pain is nerve-based, not muscle-based. (ECF No. 50 at ¶ 10.) He asserts that Naproxen does not work for similar reasons—it targets inflammation and does not help with nerve pain. (*Id.*) Finally,

2

Rivera explains that the steroid injections provide only temporary relief for a couple of weeks. (*Id.*)

On June 14, 2018, Correctional Officer Joshua DeBarge (who is not a defendant) gave Rivera two tablets of medication: Bupropion XL 150 and Gabapentin 300 gm. (ECF No. 45 at ¶ 5.) Rivera put them in his mouth, took a drink of water, and swallowed. (*Id.*) When Rivera opened his mouth, DeBarge could see that Rivera still had the Bupropion tablet on his tongue; Rivera quickly lifted his tongue. (*Id.*) DeBarge told Rivera to lower his tongue, which he did; the tablet was still there. (*Id.*) DeBarge told Rivera to swallow the tablet; he did. (*Id.*) DeBarge wrote Rivera a conduct report for misusing medication. The next day, Rivera was found guilty of the charge and was given thirty days of disciplinary segregation. (*Id.* at ¶ 6.)

About two weeks after Rivera was found guilty of abusing medication, on June 27, 2018, Dr. Kelley discontinued Rivera's prescribed pain medication, Gabapentin. (ECF No. 45 at ¶ 8.) Department of Adult Institutions (DAI) Policy 500.80.26 states, in part, "When staff-controlled medication is misused, absent exceptional circumstances, [advanced care providers] shall discontinue the medication and find alternatives that have less potential for misuse." (ECF No. 48-2 at 4.) According to Dr. Kelley, it is normal practice to take an inmate off a controlled medication if he is found misusing another medication. (ECF No. 45 at ¶ 9.)

Rivera wrote several health services requests to Dr. Kelley, asking him to reinstate his Gabapentin. (ECF No. 50 at ¶ 7.) Dr. Kelly responded to Rivera that he

3

had discontinued the Gabapentin because Rivera had misused his medication. (ECF No. 45 at ¶ 9.)

On July 19, 2018, about three weeks after canceling his Gabapentin, Dr. Kelley saw Rivera for complaints about his chronic back pain. (*Id.* at ¶ 10.) According to Dr. Kelley, during the exam, Rivera was moving about well; he observed no grimacing and Rivera moved up and down from the exam chair without difficulty. (*Id.* at ¶ 11.) Dr. Kelley decided that the Gabapentin was not necessary because Rivera had other pain-relieving treatment options, including the TENS unit, Naproxen, physical therapy, and steroid injections. (*Id.* at ¶ 12.) Dr. Kelley explains that he determines whether medication is medically necessary based on his assessment, symptoms presented by the patient, and the patient's history of misuse. (*Id.* at 19.)

Rivera disputes Dr. Kelley's characterization of their meeting. According to Rivera, he repeatedly asked Dr. Kelley why he had cancelled his Gabapentin. (ECF No. 50 at ¶ 9.) He asserts that he told Dr. Kelley that he was in a lot of pain. (*Id.*) Rivera asserts that Dr. Kelley told him that he didn't care and that he doesn't need to follow any other doctor's recommendation; he can do what he wants. (*Id.*) Rivera states that Dr. Kelley abruptly ended the exam, telling him, "we are done here." (*Id.*)

## SUMMARY JUDGMENT STANDARD

Summary judgment is required where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629

4

F.3d 665, 668 (7th Cir. 2011). When considering a motion for summary judgment, the court takes evidence in the light most favorable to the non-moving party and must grant the motion if no reasonable juror could find for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

A party asserting that a fact cannot be disputed or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)(A)-(B). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

## ANALYSIS

"[T]he Eighth Amendment, as the Supreme Court has interpreted it, protects prisoners from prison conditions that cause the wanton and unnecessary infliction of pain, including . . . grossly inadequate medical care." *Gabb v. Wexford Health Sources,*

*Inc.*, 945 F.3d 1027, 1033 (7th Cir. 2019) (quoting *Pyles v. Fahim*, 771 F.3d 403, 408 (7th Cir. 2014)) (internal quotations omitted). The court uses a two-part test to evaluate whether medical care amounts to cruel and unusual punishment; it asks: 1) "whether a plaintiff suffered from an objectively serious medical condition" and 2) "whether the individual defendant was deliberately indifferent to that condition." *Id.* (quoting *Petties v. Carter*, 836 F.3d 722, 727-28 (7th Cir. 2016) (en banc)).

There is no dispute that Rivera's chronic back pain satisfies the first prong of the standard, so my analysis will focus only on the second prong of the standard. Deliberate indifference requires "more than negligence and approaches intentional wrongdoing." *Goodloe v. Sood*, No. 947 F.3d 1026, 1030 (7th Cir. 2020) (citations omitted). To survive summary judgment, a plaintiff must present evidence from which a jury could reasonably conclude that "the prison official acted with a sufficiently culpable state of mind, meaning the official knew of or was aware of—but then disregarded—a substantial risk of harm to an inmate's health." *Id.* at 1030-31 (citations omitted).

The Seventh Circuit recently summarized two lines of cases that apply to the issues in this case. The first line demonstrates "that an inmate can establish deliberate indifference by showing that medical personnel persisted with a course of treatment they knew to be ineffective." *Id.* at 1031 (citing *Greeno v. Daley*, 414 F.3d 645, 654-55 (7th Cir. 2005)). Generally, in that line of cases, prisoners survive summary judgment by showing that officials "failed to conduct necessary tests, ignored specific treatment requests from the inmate, and persisted in offering weak

medication—all in the face of repeated protests that the medication was not working." *Id.* The Seventh Circuit stated, "Put most bluntly, faced with an inmate experiencing ongoing suffering from a serious medical condition, a prison physician cannot 'doggedly persis[t] in a course of treatment known to be ineffective' without violating the Eighth Amendment." *Id.* (quoting *Greeno*, 414 F.3d at 655).

The second line of cases establishes that "'inexplicable delay' in responding to an inmate's serious medical condition can reflect deliberate indifference." *Id.* (citing *Petties*, 836 F.3d at 728). As the Seventh Circuit noted, "That is especially so if that delay exacerbates an inmate's medical condition or unnecessarily prolongs suffering. *Id.* (citing *Williams v. Liefer*, 491 F.3d 710, 715-16 (7th Cir. 2007)).

Dr. Kelley focuses his argument on whether his decision to cancel Rivera's Gabapentin prescription was constitutionally permissible in light of his belief that Rivera had misused other medication. It is well established that disagreement with a medical professional's chosen course of treatment is insufficient to support an Eighth Amendment claim. *Snipes v. DeTella*, 95 F.3d 586, 592 7th Cir. 1996). But Dr. Kelley's focus only on the decision to cancel the Gabapentin is too narrow because it ignores the fact that, even if canceling the medication was constitutionally permissible, Dr. Kelley was not relieved of his obligations under the Constitution to respond to Rivera's persistent complaints of pain. Even the policy on which Dr. Kelley relies, in part, to justify his decision requires that advanced care providers "find alternatives [to the discontinued medication] that have less potential for misuse." Dr. Kelley concedes that he did not "find alternatives" to the cancelled Gabapentin;

7

instead, he left Rivera with already prescribed options that Rivera repeatedly told him were ineffective (the TENS unit, Naproxen, physical therapy) or provided only short-term relief (the steroid injections).

Dr. Kelley explains that he physically examined Rivera a few weeks after he discontinued Rivera's Gabapentin in response to multiple health service requests from Rivera complaining about his back pain. He states that he observed Rivera moving without difficulty; Rivera was not grimacing or otherwise indicating that he was in pain. As such, Dr. Kelley concluded that the pain-relieving options already available to Rivera were sufficient. Rivera disputes Dr. Kelley's assessment. He asserts that he told Dr. Kelley multiple times during the exam how much pain he had been in since his Gabapentin had been cancelled. He states that Dr. Kelley told him he didn't care if another doctor had recommended Gabapentin to treat his pain, and that he abruptly ended the exam.

Neither party is entitled to summary judgment because a dispute of material fact exists as to whether Dr. Kelley's decision not to pursue alternative means (such as pregabalin or lidocaine patches, *see* ECF No. 36-2 at 44) to alleviate Rivera's pain demonstrated deliberate indifference. Whether Rivera was exaggerating his pain is an issue for the jury. The Seventh Circuit has observed that self-reporting is often the only indicator a doctor has of a patient's condition. *See Greeno,* 414 F.3d at 655 (explaining that the possibility that medical staff did not do more for the prisoner because they thought he was malingering is an issue for the jury). A jury could

8

Case 2:19-cv-00264-NJ    Filed 08/06/20    Page 8 of 10    Document 57

reasonably conclude that Rivera's persistent complaints of pain were not undermined by whatever Dr. Kelley asserts he observed during his brief encounter with Rivera.

Further, considering Dr. Kelley's 2017 acknowledgment that conservative measures such as NSAIDS and physical therapy were insufficient to address Rivera's pain (ECF No. 36-2 at 5), a jury could reasonably conclude that Dr. Kelley's decision not to pursue alternative means after cancelling the Gabapentin was not based on his professional judgment that alternative pain-relieving options were unnecessary. *See id.* at 656 (emphasizing that a doctor's dogged persistence in an ineffective course of treatment could reasonably be found to be a "gratuitous cruelty" (citing *Ralston v. McGovern*, 167 F.3d 1160, 1162 (7th Cir. 1999)).

Dr. Kelley is also not entitled to qualified immunity. A prison official can find shelter in that doctrine when it would not have been clear to a reasonable official in his position that his conduct violates the law. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009). As above, Dr. Kelley frames the issue much too narrowly. He focuses only whether any precedential case put it "beyond debate that stopping a prescription for a controlled medication was constitutionally impermissible when the plaintiff had been caught misusing a different controlled medication and where Plaintiff had access to alternative medications to treat that condition." (ECF No. 44 at 9.) That is only part of the issue in this case. The issue that Dr. Kelley leaves largely unaddressed is, having decided to stop Rivera's pain medication, could Dr. Kelley persist in a course of treatment that Rivera repeatedly told him was insufficient to

9

address his pain. The law on that question has been long settled. *See Greeno*, 414 F.3d at 655. Accordingly, Dr. Kelley is not entitled to qualified immunity.

## RECRUITMENT OF COUNSEL

Because this case will now proceed to trial, I will recruit counsel to represent Rivera. It can often be difficult to find volunteer lawyers willing and able to represent *pro se* plaintiffs, so I encourage Rivera to be patient. Once a volunteer lawyer is recruited, a conference will be scheduled in this case.

**IT IS THEREFORE ORDERED** that Rivera's motion for summary judgment (ECF No. 36) is **DENIED**.

**IT IS FURTHER ORDERED** that Dr. Kelley's motion for summary judgment (ECF No. 43) is **DENIED**.

Dated in Milwaukee, Wisconsin this 6th day of August, 2020.

BY THE COURT:

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge